**Felix ROMERO, Petitioner,**

v.

**Daniel SENKOWSKI, Superintendent Clinton Correctional Facility, Respondent.**

**96 Civ. 1478 (MBM).**

United States District Court, S.D.New York.

Nov. 27, 1996.

Wilson S. Hurd, New York City, for Petitioner.

Robert M. Morgenthau, District Attorney of New York County, Marc Frazier Scholl, Assistant District Attorney, New York City, for Respondent.

## OPINION AND ORDER

MUKASEY, District Judge.

Felix Romero petitions for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction of murder in the second degree and robbery in the first degree after a trial in the Supreme Court of New York, New York County. This case was referred to Magistrate Judge Andrew J. Peck, who issued a Report and Recommendation (the "Report") on August 13, 1996 recommending that the petition be dismissed because it reiterates arguments previously presented and constitutes an abuse of the writ. Petitioner has objected to the Report's finding that he has repeated earlier claims. Additionally, he argues that he is "actually innocent" and that his conviction was a fundamental miscarriage of justice. Finally, petitioner requests that if this court is not persuaded by his arguments, he be given leave to withdraw the petition. For the reasons set forth below and in the Report, the writ is denied and the petition is dismissed.

### I.

The facts of this case, as set forth in the Report, are as follows:

On April 11, 1981, four men entered the Columbia Wine and Liquor Store in Manhattan. The men, who were armed, forced Lee Dixon, an employee, and Robert Peterson, the store owner, into an office at the rear of the store. One of the robbers then searched Allan Peterson, Robert Peterson's father, took $200 from Allan Peterson's pockets, and forced him into the back office. Allan Peterson heard a gunshot, and saw that one of the gunmen, but he could not tell which, had shot his son in the back. After the shooting, the gunmen fled. Robert Peterson died from the gunshot wound.

On April 16, 1981, Romero and three other men were arrested in connection with an unrelated offense. On April 17, 1981, the Daily News published an article about their arrest, accompanied by photographs of Romero and the three other men. Allan Peterson called the police because he believed the men in the photograph were the same men who had robbed him and killed his son. On April 24, 1981, the police showed Peterson four photo arrays, and on May 20, 1981, Peterson viewed four lineups. Peterson identified Romero and one other suspect as two of the gunmen who had attempted to rob his liquor store. The trial court found Peterson's identifications reliable and untainted by suggestiveness.

(Report at 3–4) (citations omitted).

After an initial mistrial, the jury at the second trial found Romero guilty of murder

in the second degree and robbery in the first degree (Trial Transcript 803–04) for which he was sentenced to concurrent terms of 18 years to life and 8 1/3 to 25 years, respectively. (Sentencing Minutes at 13–14).

On January 15, 1987, the Appellate Division, First Department affirmed the conviction. *People v. Romero*, 126 A.D.2d 994, 510 N.Y.S.2d 405 (1st Dep't 1987). Then, on May 12, 1987, the New York Court of Appeals denied leave to appeal. *People v. Romero*, 69 N.Y.2d 1009, 517 N.Y.S.2d 1043, 511 N.E.2d 102 (1987).

On May 17, 1988, Romero filed his first petition ("1988 Petition") for a writ of habeas corpus in this court claiming that: (1) the State failed to prove his guilt beyond a reasonable doubt, because Allan Peterson's eyewitness identification was unreliable; (2) the identification procedures were tainted and prejudicial; (3) Romero's trial counsel was ineffective; (4) the court erred in denying Romero's motion to suppress allegedly suggestive and tainted identifications; (5) the court violated Romero's due process rights by improperly marshalling evidence and prejudicially charging the jury; (6) the State failed to prove felony murder as there was no evidence that the murder was committed in the course of, in furtherance of, or in the immediate flight from, the commission of a robbery; (7) the State deprived Romero of a fair trial by prosecutorial misconduct—specifically, the delivery of an inflammatory summation; (8) the court erred in refusing to allow Romero to call an expert identification witness; and (9) Romero was improperly denied his right to appear before the grand jury which indicted him. (1988 Petition ¶ 12).

On January 4, 1991, this court denied the 1988 petition. *Romero v. Scully*, # 88 Civ. 4000, 1991 WL 2998 (S.D.N.Y. Jan. 4, 1991). Judge Tenney specifically addressed the claims that (1) the identification testimony was inherently unreliable, and (2) the prosecutor's summation was inflammatory and prejudicial. He found both allegations unpersuasive. In addition, Judge Tenney stated, "The court has reviewed Romero's remaining arguments and finds them to be unpersuasive." On March 1, 1991, the district court denied Romero a certificate of probable cause. (March 1, 1991 order). On August 15, 1991, the Second Circuit dismissed Romero's appeal of the denial of a certificate of probable cause. On January 13, 1992, the Supreme Court denied certiorari. *Romero v. Scully*, 502 U.S. 1043, 112 S.Ct. 899, 116 L.Ed.2d 801 (1992).

Romero then filed state collateral attacks. On July 10, 1992, he filed a motion to vacate the judgment pursuant to N.Y.C.P.L. § 440 in the Supreme Court, New York County. (February 29, 1996 petition ["1996 Petition"] ¶ 11(e)). Upon denial of this motion, Romero filed a petition for a writ of habeas corpus in New York State Supreme Court, Dutchess County. (*Id.* ¶ 11(f)). That petition was also denied, and the decision affirmed by the Appellate Division, Second Department. (*Id.* ¶ 11(g)). The New York Court of Appeals denied leave to appeal on September 26, 1995. (*Id.* ¶ 11(h)).

Finally, Romero filed his current petition on February 29, 1996, which was referred to Magistrate Judge Peck for a Report and Recommendation.

The 1996 petition outlines 13 claims for relief, alleging that: (1) Romero's "due process rights were violated by police use of a suggestive identification procedure," because a photo array "exhibited [Romero] with a distinctive feature known to the witness"; (2) the evidence on which Romero's felony murder conviction was based was legally insufficient, because he lacked intent to commit the separate felony of robbing a store employee; (3) the evidence on which Romero's felony murder conviction was based was legally insufficient, because he lacked intent to aid in the commission of the separate employee robbery by his co-felons; (4) the evidence that the murder occurred in furtherance of the robbery of the employee was legally insufficient; (6) Romero's "due process rights were violated by police use of a suggestive identification procedure," as "there was evidence that [a key witness] did not have an independent source from which to make an identification"; (7) the "State did not prove an element of felony murder based on accessorial liability to robbery [because t]he identity of the killer was not proven"; (8) the

New York State felony murder statute is unconstitutional; (9) Romero's second trial, which followed an initial mistrial, violated his "constitutional right against double jeopardy"; (10) Romero's 14th Amendment right to an impartial judge was violated; (11) the jury was improperly instructed as to certain evidence; (12) the "conjunctive submission of felony murder, and the lesser included offense of robbery, violated [Romero's] due process rights"; and (13) the judge's charge to the jury was biased and failed to instruct on every element of the crime with which Romero was charged. (1996 Petition ¶ 12).

The Report issued by Magistrate Judge Peck recommended that the 1996 Petition be "denied because it is a successive petition and an abuse of the writ of habeas corpus." (Report at 2). Additionally, the Report finds that Romero's petition does not satisfy either the "cause and prejudice" or the "fundamental miscarriage of justice" exceptions which would "open the gateway" to a determination on the merits. (Report at 11–13).

Petitioner makes five objections to the Report, which raise two basic challenges for this court to resolve. First, petitioner argues that the 1996 petition is neither successive nor an abuse of the writ. Second, petitioner claims that Magistrate Judge Peck is incorrect on both his legal analysis and his factual determination regarding the "fundamental miscarriage of justice" exception and therefore this petition should be decided on the merits.

### III.

Under Fed.R.Civ.P. 72(b), a district judge may adopt those parts of a magistrate judge's report to which no specific objection is made, provided they are not clearly erroneous. *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 471–72, 88 L.Ed.2d 435 (1985). The court is required to make *de novo* determinations regarding those parts of the report to which any party objects, but a *de novo* hearing is not required. *United States v.*

*Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980).

### IV.

The federal habeas corpus statute in force at the time this petition was filed [1] stated that

a subsequent application for a writ of habeas corpus … need not be entertained by a court of the United States or a justice or a judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

28 U.S.C. § 2244(b).

Pursuant to that statute, a court may not reach the merits of "successive claims which raise grounds identical to grounds heard and decided on the merits in a previous petition," or new claims which constitute an "abuse of the writ". *Sawyer v. Whitley,* 505 U.S. 333, 337–39, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992). *See also* 28 U.S.C. § 2254, Rule 9(b). I agree with the magistrate judge that petitioner's grounds 1 through 7, 10, 11 and 13 of the 1996 petition repeat the grounds presented by petitioner's 1988 petition. (Report at 9). However, it is unnecessary for me to make an individual determination as to each claim because all 13 of the 1996 petition's grounds also constitute an "abuse of the writ."

The Supreme Court has held that a petition "raising grounds that were available but not relied upon in a prior petition" is an "abuse of the writ." *Kuhlmann v. Wilson,* 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364 (1986). This failure to raise a claim is an abuse of the writ "regardless of whether the failure to raise it earlier stemmed from a deliberate choice." *McCleskey v. Zant,* 499 U.S. 467, 489, 111 S.Ct.

---

1. A Second Circuit panel has decided that the Antiterrorism and Effective Death Penalty Act (Pub.L. No. 104–132, 110 Stat. 1214) "does not apply retroactively to habeas corpus petitions not involving death sentences filed prior to the stat-ute's enactment" on April 24, 1996. *Boria v. Keane,* 90 F.3d 36, 37–38 (2d Cir.1996). As this petition was filed on February 29, 1996, the amended statute is not applicable.

1454, 1468, 113 L.Ed.2d 517 (1991). Any petition found to constitute an abuse of the writ should be dismissed. However, a petitioner may avoid dismissal, despite his failure to raise a claim in an earlier petition, by showing either: (1) cause and prejudice; or (2) a fundamental miscarriage of justice which would result from a failure to entertain the claim. *Id.* at 493–95, 111 S.Ct. at 1469–71.

■ For "cause" to exist, petitioner must show "reasonable unavailability of the factual basis for the claim" which prevented it from being raised in the previous petition. *Id.* at 497, 111 S.Ct. at 1471–72. Petitioner contends that scholarly works have only recently formulated the issues which are now the subject of this petition. Specifically, he cites a 1995 treatise on mistaken identification and a 1985 *Cornell Law Review* article on the constitutionality of the New York felony murder rule. However petitioner admits that the analysis in the 1995 treatise is based upon previous works which were available in 1988 at the time of the first petition. The *Cornell Law Review* article was also available in 1988 and had been cited by the Second Circuit in 1987. *Bethea v. Scully,* 834 F.2d 257 (2d Cir.1987). The issues of mistaken identification and the constitutionality of the felony murder rule were far from novel when Romero filed his first petition for habeas corpus relief. Therefore, there is no showing of "cause" for the delay in bringing these claims.

■ In addition, petitioner seems to imply that his habeas corpus counsel was ineffective in failing to raise these issues in 1988. However, Romero's counsel's failings cannot be considered "cause" because there is no constitutional right to counsel in federal habeas corpus proceedings. *Washington v. Delo,* 51 F.3d 756 (8th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 205, 133 L.Ed.2d 138 (1995). Therefore, petitioner has failed to show cause for the delay in bringing these claims and the "cause and prejudice" exception is not applicable.

■ The second way to avoid dismissal for abuse of the writ is to demonstrate that a "fundamental miscarriage of justice" would occur if the petition were not decided on the merits. This exception applies in a "narrow class of cases" where "a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470. This exception is available only where the petitioner can supplement his constitutional violation claim with "a colorable showing of factual innocence." *Kuhlmann,* 477 U.S. at 454, 106 S.Ct. at 2631. This showing of innocence requires "petitioner to support his allegations of constitutional error with *new reliable evidence*—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, ——, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995) (emphasis added). "Without any *new evidence* of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at ——, 115 S.Ct. at 861 (emphasis added).

■ Petitioner claims to present several forms of "new" evidence. However, the only evidence which goes to the "actual innocence" of the petitioner is the alibi testimony that Romero claims he can procure and which he claims will establish that he was at a birthday party at the time of the crime. In the Report, the magistrate judge incorrectly stated that Romero raised his alibi at trial and that the "jury obviously did not believe it", referring to the testimony of the alibi witnesses. (Report at 13). Although the first jury did hear alibi witnesses, that jury never deliberated because the judge declared a mistrial. The jury that convicted Romero never heard the alibi witnesses nor did the defendant take the stand.

However, this evidence lacks sufficient weight to prove actual innocence. After polling the first jury, the defense team found that the jurors did not believe the alibi witnesses who had been presented prior to the declaration of a mistrial. (Response to Objections, Ex. 3 Diller Aff. ¶¶ 3–4). Therefore, petitioner and his counsel at the second trial made a tactical decision not to call these

witnesses because their untruthful demeanor might taint the defendant. *Id.* In the estimation of counsel, this evidence was not only unhelpful but also would have prejudiced the jury against the defendant. I cannot credit the claim that these same unreliable witness now affirmatively prove actual innocence, especially considering that *Schlup* requires a showing of "new reliable evidence." Therefore, petitioner has failed to show a fundamental miscarriage of justice.

■ As noted at the beginning of this opinion, petitioner has requested that he be given leave to withdraw this petition if my decision should be unfavorable to his position. As this is not an advisory court, U.S. Const. Art. III, § 2 (extending federal judicial power only to "cases" and "controversies"), leave to withdraw is denied.

For the above reasons, this petition raises only factual disputes that are refuted by the record, and petitioner has made no substantial showing that a constitutional right has been denied. Therefore, no certificate of appealability will issue. 28 U.S.C. § 2253(c); Rule 22 Fed.R.App.P.

\* \* \*

For the foregoing reasons the request for a writ is denied, and the petition dismissed.

SO ORDERED.

UNITED STATES ex rel FELIX
ROMERO, Petitioner,

-against-

DANIEL SENKOWSKI, Superintendent,
Clinton Correctional Facility,
Respondent.

96 Civ. 1478 (MBM) (AJP)

*REPORT AND RECOMMENDATION*

TO THE HONORABLE MICHAEL B. MUKASEY, United States District Judge:

PECK, United States Magistrate Judge.

Petitioner Felix Romero has filed his second habeas corpus petition to this Court, alleging that: (1) his "due process rights were violated by police use of a suggestive identification procedure," because a photo array "exhibited [Romero] with a distinctive feature known to the witness;" (2) the evidence on which Romero's felony murder conviction was based was legally insufficient, because he lacked intent to commit the separate robbery of a store employee; (3) the evidence on which Romero's felony murder conviction was based was legally insufficient, because he lacked intent to aid in the commission of that separate employee robbery; (4) the evidence that a killing occurred in the course of the robbery of the employee was legally insufficient; (5) the evidence that a killing occurred in furtherance of the robbery of the employee was legally insufficient; (6) Romero's "due process rights were violated by police use of a suggestive identification procedure," as "there was evidence that [a key witness] did not have an independent source from which to make an identification;" (7) the "State did not prove an element of felony murder based on accessorial liability to robbery [because t]he identity of the killer was not proven;" (8) "[t]he New York State felony murder statute is unconstitutional;" (9) Romero's second trial, which followed an initial mistrial, violated his "constitutional right against double jeopardy;" (10) his "14th Amendment right to an impartial judge was violated;" (11) the judge improperly instructed the jury as to certain evidence that was not presented at the second trial; (12) the "conjunctive submission of felony murder, and the lesser included offense of robbery, violated [Romero's] due process rights;" and (13) the judge's charge to the jury was biased and failed to instruct on every element of the crime with which Romero was charged. (Petition, dated February 29, 1996 ["1996 Petition"], ¶ 12.) Romero is represented in this 1996 Petition by new counsel, Wilson S. Hurd.

For the reasons set forth below, I recommend that Romero's petition for a writ of habeas corpus be denied because it is a successive petition and an abuse of the writ of habeas corpus.

***FACTS***

The facts concerning the robbery and felony murder for which Romero was convicted are set forth in this Court's opinion on Romero's prior habeas petition, *Romero v. Scully,*

88 Civ. 4000, 1991 WL 2998 (S.D.N.Y. Jan. 4, 1991), familiarity with which is assumed.

On April 11, 1981, four men entered the Columbia Wine and Liquor Store in Manhattan. *Romero v. Scully*, 1991 WL 2998 at *1. The men, who were armed, forced Lee Dixon, an employee, and Robert Peterson, the store owner, into an office at the rear of the store. *Id.* One of the robbers then searched Allan Peterson, Robert Peterson's father, took $200 from Allan Peterson's pockets, and forced him into the back office. *Id.* Allan Peterson heard a gunshot, and saw that one of the gunmen, but he could not tell which, had shot his son in the back. After the shooting, the gunmen fled. *Id.* Robert Peterson died from the gunshot wound. *Id.*

On April 16, 1981, Romero and three other men were arrested in connection with an unrelated offense. *Id.* On April 17, 1981, the Daily News published an article about their arrest, accompanied by photographs of Romero and the three other men. *Id.* Allan Peterson called the police because he believed the men in the photograph were the same men who had robbed him and killed his son. *Id.* On April 24, 1981, the police showed Peterson four photo arrays, and on May 20, 1981, Peterson viewed four lineups. *Id.* at *2. Peterson identified Romero and one other suspect as two of the gunmen who had attempted to rob his liquor store. *Id.* The trial court found Peterson's identifications reliable and untainted by suggestiveness. *Id.*

### PROCEDURAL HISTORY

After an initial mistrial, Romero's second jury trial resulted in his conviction on April 15, 1982 of murder in the second degree and robbery in the first degree. (Trial Transcript 803–04.) On May 14, 1982, Romero was sentenced to concurrent terms of imprisonment of eighteen years to life on the felony murder count and eight and one-third to twenty-five years on the robbery count. (Sentencing Minutes 13–14.)

The First Department affirmed Romero's conviction on January 15, 1987. *People v. Romero*, 126 A.D.2d 994, 510 N.Y.S.2d 405 (1st Dep't 1987). The New York Court of Appeals denied leave to appeal on May 12, 1987. *People v. Romero*, 69 N.Y.2d 1009, 517 N.Y.S.2d 1043, 511 N.E.2d 102 (1987).

In his first petition to this Court for a writ of habeas corpus, dated May 17, 1988, Romero claimed that: (1) the State failed to prove Romero's guilt beyond a reasonable doubt, because Allan Peterson's eyewitness identification was unreliable; (2) the identification procedures were tainted and prejudicial; (3) ineffective assistance of trial counsel; (4) the court erred in denying Romero's motion to suppress allegedly suggestive and tainted identifications; (5) the court violated Romero's due process rights by improperly marshalling evidence and prejudicially charging the jury; (6) the State "failed to prove [Romero] guilty of felony murder as there was no evidence that the murder was committed in the course of [or] in furtherance of, or in the immediate flight from, the commission of a robbery;" (7) "[t]he Prosecutor . . . was guilty of misconduct," specifically an inflammatory summation "which, by reason of its cumulative effect, deprived [Romero] of a fair trial;" (8) the court erred in refusing to allow Romero to call an expert identification witness; (9) Romero was improperly denied his right to appear before the Grand Jury which indicted him. (Petition, dated May 17, 1988 ["1988 Petition"], ¶ 12.)

This Court denied Romero's 1988 Petition on January 4, 1991. *Romero v. Scully*, 88 Civ. 4000, 1991 WL 2998 (S.D.N.Y. Jan. 4, 1991).[1] Romero filed a Notice of Appeal to the Second Circuit. (Notice of Appeal dated January 31, 1991.) Judge Tenney denied Romero a certificate of probable cause on March 1, 1991. (Order dated March 1, 1991.) Romero appealed the denial of a certificate of probable cause. (Notice of Appeal dated March 8, 1991.) The Second Circuit denied his motion and dismissed the appeal on August 15, 1991. (Notice dated August 15,

---

1. Although Romero raised nine arguments in his pro se 1988 Petition, his counsel discussed only the identification and summation issues in his memorandum of law. (Reply Memorandum, dated 4/4/89, at 1–9.) This Court specifically addressed only those two arguments in its opinion denying relief, while noting that it had reviewed Romero's remaining arguments and found them to be unpersuasive. *Romero v. Scully*, 1991 WL 2998 at *5.

1991.) The Supreme Court denied certiorari on January 13, 1992. *Romero v. Scully*, 502 U.S. 1043, 112 S.Ct. 899, 116 L.Ed.2d 801 (1992).

After his first (1988) federal habeas petition was denied, Romero filed state court collateral attacks on his conviction. On July 10, 1992, Romero filed a motion to vacate the judgment pursuant to N.Y. C.P.L. § 440 in the Supreme Court, New York County. (1996 Petition ¶ 11(e).) The motion was denied on September 23, 1992. (*Id.*) Romero then filed a petition for a writ of habeas corpus on March 19, 1993 with the New York Supreme Court, Dutchess County. (*Id.,* ¶ 11(f).) The petition was denied, and the Second Department affirmed on May 23, 1994. (*Id.* ¶ 11(g).) The Court of Appeals denied leave to appeal on September 26, 1995. (*Id.* ¶ 11(h).)

Romero filed his current habeas petition with this Court on February 29, 1996. (*See* Romero's Br. at 68.) The petition was referred to me for a Report and Recommendation on July 17, 1996.

## *ANALYSIS*

### *ROMERO'S CURRENT HABEAS PETITION SHOULD BE DISMISSED BECAUSE IT IS A SUCCESSIVE PETITION AND ABUSE OF THE WRIT OF HABEAS CORPUS* [2]

Even prior to its April 1996 amendment, the federal habeas corpus statute prohibited successive habeas petitions, with certain exceptions:

When after an evidentiary hearing on the merits of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, *a subsequent*

*application for a writ of habeas corpus on behalf of such person need not be entertained by a court of the United States or a justice or a judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.*

28 U.S.C. § 2244(b) (emphasis added). Rule 9(b) of the Rules Governing Section 2254 [Habeas Corpus] Cases in the United States District Courts further states:

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Rule 9(b), 28 U.S.C. foll. § 2254.

In *Sawyer v. Whitley*, the Supreme Court clarified:

Unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of: (a) *successive claims* which raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised which constitute an *abuse of the writ;* or (c) *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims.

505 U.S. 333, 338, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992) (citations omitted, emphasis in original).

---

**2.** Because the Court recommends that Romero's petition be dismissed for the reasons set forth in this text, the Court need not address the effect, if any, of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub.L. No. 104–132, 110 Stat. 1214), on non-capital case habeas corpus petitions, such as Romero's, filed and pending before the Act's April 24, 1996 enactment. A

Second Circuit panel has decided that the Antiterrorism Act "does not apply retroactively to habeas corpus petitions not involving death sentences filed prior to the statute's enactment." *Boria v. Keane*, 90 F.3d 36, 37–38 (2d Cir.1996). *See also Reyes v. Keane*, 90 F.3d 676 (2d Cir. 1996).

In *Kuhlmann v. Wilson*, the Supreme Court defined the terms "successive petition" and "abuse of the writ":

> A "successive petition" raises grounds identical to those raised and rejected on the merits on a prior petition.... The concept of "abuse of the writ" is founded on the equitable nature of habeas corpus. Thus, where a prisoner files a petition raising grounds that were available but not relied upon in a prior petition, or engages in other conduct that "disentitle[s] him to the relief he seeks," the federal court may dismiss the subsequent petition on the ground that the prisoner has abused the writ.

477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364 (1986).

Romero's petition both raises successive claims and constitutes an abuse of the writ of habeas corpus.

### A. *Romero's 1996 Habeas Petition Raises Successive Grounds*

Several grounds in Romero's current 1996 Petition are identical to those raised in his 1988 Petition. (*Compare* 1996 Petition ¶ 12 *with* 1988 Petition ¶ 12.) Grounds one and six of the 1996 Petition, regarding police use of allegedly suggestive identification procedures, are repetitive of grounds one, two and four of the 1988 Petition, which also question the identification procedures. Grounds four and five of the 1996 Petition, that there was no evidence that a killing occurred in the course of or in furtherance of a robbery, mirror ground six of Romero's 1988 Petition. Current grounds two, three and seven are closely related to ground six of Romero's 1988 Petition, as they all question the sufficiency of the evidence proving Romero guilty of felony murder. Finally, grounds ten, eleven and thirteen of Romero's 1996 Petition, which challenge the conduct of the trial judge, alleging that the judge was prejudiced against Romero, improperly marshalled evidence, and prejudicially charged the jury, mirror ground five of Romero's 1988 Petition. Only Romero's current eighth, ninth and

twelfth grounds do not have counterparts in his 1988 Petition.

Romero's grounds for habeas relief one through seven, ten, eleven and thirteen in his 1996 Petition are successive claims, and this Court should not review the merits of those claims.[3]

### B. *Romero's Petition Abuses the Writ of Habeas Corpus*

"[A] petitioner can abuse the writ [of habeas corpus] by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice." *McCleskey v. Zant*, 499 U.S. 467, 489, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991); *see also, e.g., Gomez v. United States District Court*, 503 U.S. 653, 653–54, 112 S.Ct. 1652, 1653, 118 L.Ed.2d 293 (1992). Failure to raise a claim is, however, excusable "upon a showing of cause and prejudice," or "that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey v. Zant*, 499 U.S. at 493–95, 111 S.Ct. at 1470; *see also, e.g., Sawyer v. Whitley*, 505 U.S. at 337–39, 112 S.Ct. at 2518.

The new grounds raised by Romero in his 1996 Petition that were not included in his 1988 Petition do not fall within either of the exceptions excusing a failure to submit claims in a prior petition.

#### 1. *Romero Does Not Satisfy the Cause and Prejudice Exception*

"For cause to exist, [an] external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. at 497, 111 S.Ct. at 1472; *see also, e.g., Amadeo v. Zant*, 486 U.S. 214, 222, 108 S.Ct. 1771, 1776, 100 L.Ed.2d 249 (1988); *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). "Once the petitioner has established cause, he must show ' "actual prejudice" resulting from the errors of which he com-

---

**3.** Even if the Court were to find that some or all of those claims are not successive claims, they would be precluded as an abuse of the writ for the same reasons discussed in the following section.

plains.'" *McCleskey v. Zant*, 499 U.S. at 494, 111 S.Ct. at 1470.

Romero offers no justification for failing to raise the new grounds in his previous 1988 Petition. Nowhere in his 1996 Petition or his counsel's lengthy memoranda of law does Romero allege that he has discovered new relevant evidence or that he was in any way impeded from raising any of the current grounds in his prior 1988 Petition. Romero also fails to show any prejudice arising from any prior inability to include these grounds in his 1988 petition. The 1996 Petition thus does not fall under the "cause and prejudice" exception.

## 2. *Romero's Petition Does Not Satisfy the Fundamental Miscarriage of Justice Exception*

Romero also asserts an underlying claim of actual innocence (1996 Petition at p. 1), presumably to bring his case within the "narrow class of cases ... implicating a fundamental miscarriage of justice," where "a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. at 494, 111 S.Ct. at 1470; *see also, e.g., Schlup v. Delo,* 513 U.S. 298, ——, ——, 115 S.Ct. 851, 861, 864, 130 L.Ed.2d 808 (1995); *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649; *Kuhlmann v. Wilson,* 477 U.S. 436, 452, 106 S.Ct. 2616, 2626–27, 91 L.Ed.2d 364 (1986). A petitioner must therefore demonstrate "that it is more likely than not that 'no reasonable juror' would have convicted him" absent the constitutional violation. *Schlup v. Delo,* 513 U.S. at ——, 115 S.Ct. at 868.

Moreover, as the Supreme Court made clear in *Herrera v. Collins,* "[t]he fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993) (quoting *Kuhlmann v. Wilson,* 477 U.S. at 454, 106 S.Ct. at 2627, emphasis added). Thus, "[t]o be credible, such a claim [of innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. at ——, 115 S.Ct. at 865. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at ——, 115 S.Ct. at 861.

Romero claims that he is "actually innocent of the crime for which he was convicted. At the time of the crime, he was home, at his birthday party." (1996 Petition at p. 1; *see also* Romero 2/29/96 Brief at 41–43; Romero 7/15/96 Brief at 21.) Romero, however, fails "to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial." *Schlup v. Delo,* 513 U.S. at ——, 115 S.Ct. at 865. Romero raised his birthday party defense at trial, and the jury obviously did not believe it. (*See* Romero 2/29/96 Brief at 41–43, citing to examples of trial testimony of Romero's alibi defense.) Romero presents no new evidence in support of his claim of actual innocence. Because Romero fails to show new evidence of his innocence or that no reasonable jury would have convicted him of felony murder, his 1996 Petition does not fall within the parameters of the fundamental miscarriage of justice exception. The new claims in Romero's 1996 Petition thus constitute an abuse of the writ of habeas corpus, and his petition should be dismissed.

## CONCLUSION

For the reasons set forth above, I recommend that this Court deny Romero's second, 1996 habeas corpus petition as both a successive petition and an abuse of the writ.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the cham-

bers of the Honorable Michael B. Mukasey, 500 Pearl Street, Room 2240, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Mukasey. Failure to file objections may result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

DATED: August 13, 1996.